UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| RITA STURTEVANT,              )<br>                                              )<br>            *Plaintiff*              )<br>                                              )<br>v.                                           )<br>                                              )<br>JO ANNE B. BARNHART,      )<br>**Commissioner of Social Security,**  )<br>                                              )<br>            *Defendant*              ) | Docket No. 04-188-B-W |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question whether substantial evidence supports the commissioner's determination that the plaintiff, who alleges that she was disabled as of her date last insured of March 30, 1996 by mental retardation and depression, did not then have a condition meeting a listing of disabling impairments. At oral argument, counsel for both sides stipulated to a remand to address a procedural error – the absence of a hearing transcript from the record. I recommend, in addition, that the decision of the commissioner be vacated on the merits of the point raised in the plaintiff's brief and the case remanded for further proceedings on that basis as well.

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on June 2, 2005, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority and page references to the administrative record.

The plaintiff filed applications for both SSD and Supplemental Security Income ("SSI") benefits on March 27, 2002. Record at 16. She was awarded SSI but not SSD benefits. *Id.* at 21. Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had acquired sufficient quarters of coverage to remain insured for purposes of SSD only through March 30, 1996, Finding 1, Record at 20; that the medical evidence established that on the date her insured status expired her only severe impairments were alcohol dependence and alcohol-induced depression, Finding 3, *id.*; that excluding the effects of alcoholism, she was not under a disability at any time through March 30, 1996, her date last insured ("DLI"), Finding 5, *id.*; that the medical evidence established that she currently had a history of alcohol dependence; major depression; anxiety disorder; personality disorder; and right carpal tunnel syndrome, impairments that were severe but did not meet or equal the criteria of those listed in Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings"), Finding 6, *id.*; that since January 15, 2002 she had lacked the residual functional capacity ("RFC") to lift and carry more than twenty pounds or more than ten pounds on a regular basis, make constant use of her right upper extremity, do more than simple, routine work, do work that involved more than occasional public contact or concentrate on and attend to work tasks on a sustained basis, Finding 7, *id.*; that her capacity for the full range of light work was significantly diminished by her nonexertional limitations, Finding 9, *id.*; that she had been under a disability since January 15, 2002, Finding 15, *id.* at 21; and that alcoholism and drug addiction were not material to the determination that she was currently disabled, Finding 16, *id.* The Appeals Council declined to review the plaintiff's appeal of the unfavorable SSD portion of the decision, *id.* at 6-8, making it the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The plaintiff's appeal implicates Step 3 of the sequential-evaluation process, at which stage a claimant bears the burden of proving that his or her impairment or combination of impairments meets or equals the Listings. 20 C.F.R. § 404.1520(d); *Dudley v. Secretary of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987). To meet a listed impairment the claimant's medical findings (*i.e.*, symptoms, signs and laboratory findings) must match those described in the listing for that impairment. 20 C.F.R. §§ 404.1525(a), 404.1528. To equal a listing, the claimant's medical findings must be "at least equal in severity and duration to the listed findings." *Id*. § 404.1526(a). Determinations of equivalence must be based on medical evidence only and must be supported by medically acceptable clinical and laboratory diagnostic techniques. *Id*. § 404.1526(b).

The plaintiff asserts that her condition as of March 30, 1996 should have been found to have met Listing 12.05B (mental retardation). *See generally* Statement of Specific Errors ("Statement of Errors") (Docket No. 6). She seeks a remand for the taking of testimony of a medical expert who would review the entire record, including her psychometric testing scores as they relate to Listing 12.05B. *See id*. at 4. I agree that remand is required for further consideration of the Listings issue.

## II. Discussion

### A. Stipulation for Remand To Address Missing Transcript

In his decision, the administrative law judge noted that the hearing in this case began on June 18, 2003 and was continued to December 4, 2003. *See* Record at 16. The Record contains a transcript of the December 4 hearing, *see id.* at 22-29, but none of the initial June 18 hearing. At the outset of oral argument before me, counsel for both parties disclosed that they had only freshly discovered that the June 18, 2003 transcript was missing from the Record. Both agreed that this omission necessitated remand. Given the unfortunate timing of this discovery, I suggested that counsel proceed to argue the merits of the point raised in the Statement of Errors and enter into a stipulation regarding remand for the purpose of addressing the missing transcript. I then would file a decision reflecting counsel's stipulation and recommending decision with respect to the merits of the point raised in the Statement of Errors. Counsel agreed to the handling of the case in this fashion.

As regards the missing transcript, counsel stipulated to a remand for purposes of completing the Record. The commissioner will have thirty days from the date hereof – that is, until July 7, 2005 – to produce a copy of the transcript of the June 18, 2003 hearing, failing which she will arrange for the holding of a new hearing before an administrative law judge and such other additional development of the Record as may be appropriate.

### B. Recommended Decision on Listings Argument

While this case must be remanded to address the issue of the missing transcript, I recommend that it be remanded on the additional basis, set forth in the Statement of Errors, that the Listings issue was mishandled.

Listing 12.05 provides in relevant part:

> 12.05  *Mental retardation*: Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive functioning

> initially manifested during the developmental period: i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> \*\*\*
>
> B. A valid verbal, performance, or full scale IQ of 59 or less[.]

As mentioned above, hearings were held in this case on June 18, 2003 and December 4, 2003. *See* Record at 16. In the interim between hearings, Disability Determination Services ("DDS") consultant Willard E. Millis, Jr., Ph.D., examined the plaintiff, administering the Wechsler Adult Intelligence Scale – Third Revision, which placed her verbal IQ at 62, her performance IQ at 60 and her full-scale IQ at 58. *See id*. at 660. In his report, dated July 16, 2003, Dr. Millis commented:

> This places her in the mildly mentally retarded range of intelligence and seems to be a valid representation of her current functioning status. She should not, however, be seen as mentally retarded, but these low scores seemed to be more of an artifact of the depression, something[] which appears to have severely impacted her executive functioning. Nevertheless[,] even when functioning at her optimal level, probably she would be seen as having relatively low cognitive skills.

*Id*.

When the plaintiff's hearing was reconvened in December the administrative law judge stated:

> Counsel, you and I talked briefly off the record, but to capsulize that and get the procedural posture here, since our last meeting we had a consultative examination [the Millis report] which found a severe psychiatric disorder. We still have clouding the picture the fact that her date last insured was March of 1996. We have a Title II [SSD] and a Title XVI [SSI] claim. On the record I'm willing to find that she's entitled to benefits and relate that period back 18 months from the date of that examination, 7/15/03. That will take us back at least to near the application date, and for the Title XVI Benefits. That doesn't get you back to 1996. I'm going to, based upon the IQ scores that came through in this, even though they hedged a little bit and said this may be as a result of the depression and what all, I'm going to have, I'm going to review this again to see if there is any, see if I agree fully with the DDS conclusion that there is not sufficient medical evidence to relate that back any further so we might catch that date last insured, okay, because there's so much alcohol and so much other, there is no treatment to speak of . . . .

5

*Id*. at 24-25.[2]

The plaintiff's counsel alluded to Listing 12.05B, acknowledging that a claimant's condition must have manifested itself before age 22. *See id*. at 25-26. The administrative law judge pointed out that there had been evidence that the plaintiff had attended college for a while, *see id*. at 26; however, the plaintiff then testified that she had not actually attended Husson College as previously reported but rather had attended a Job Corps program held on the college campus, *see id*. at 26-28.[3] The plaintiff's counsel sought, and was granted, permission to submit her school records. *See id*. at 25. Post-hearing, he submitted copies of the plaintiff's grade-school and high-school records as well as a letter from a Penobscot Job Corps Center employee confirming that the plaintiff attended Job Corps from May 27, 1980 to August 6, 1980, resigning from the program prior to its completion. *See id*. at 132-46. As the plaintiff points out in her Statement of Errors, *see* Statement of Errors at 3, her best school year was second grade in 1970, when she obtained three Cs and three Bs, *see* Record at 144. In eighth grade, she failed five courses and obtained three Ds; her teacher recommended that she not be promoted. *See id.* In her freshman year at Lewiston High School, she earned no credits in seven courses and a half-credit in one course. *See id*. at 134. In her sophomore year, she earned one and a half credits out of six courses attempted. *See id*. She dropped out of high school at the beginning of her junior year, *see id*., although she did eventually obtain her GED, *see id*. at 136.

As the plaintiff observes, *see* Statement of Errors at 2-3, there is a line of caselaw presuming, for purposes of meeting the longitudinal requirement of Listing 12.05, that a person's IQ remains fairly constant throughout life absent evidence indicating that the person suddenly became mentally retarded,

---

[2] The administrative law judge apparently referred to reports by DDS non-examining consultants Peter G. Allen, Ph.D., and David R. Houston, Ph.D., that predated the Willis report in which both consultants found insufficient evidence to draw a conclusion regarding the plaintiff's mental condition as of her DLI. *See* Record at 470-83, 580-93.
[3] The plaintiff previously had told a counselor she attended Husson College for a year and a half. *See* Record at 572.

*see, e.g., Hodges v. Barnhart,* 276 F.3d 1265, 1268-69 (11th Cir. 2001), *aff'd on subsequent appeal*, 99 Fed. Appx. 875 (11th Cir. 2004); *Guzman v. Bowen*, 801 F.2d 273, 275 (7th Cir. 1986); *Branham v. Heckler*, 775 F.2d 1271, 1274 (4th Cir. 1985); *Durham v. Apfel*, 34 F. Supp.2d 1373, 1379-80 (N.D. Ga. 1998). Although this remains an open question in the First Circuit, this court has signaled in dictum that it views the establishment of that rebuttable presumption with favor. *See Lombard v. Barnhart*, 91 Soc. Sec. Rep. Serv. 505, 508 n.5 (D. Me. 2003) (rec. dec., *aff'd* Nov. 18, 2003); *Ouellette v. Apfel*, No. 00-112-P-H, 2000 WL 1771122, at *3 (D. Me. Dec. 4, 2000) (rec. dec., *aff'd* Dec. 29, 2000).

Puzzlingly, although the plaintiff's Step 3 argument in support of her SSD claim was clearly placed in issue, the administrative law judge never addressed it. *See* Record at 16-21. To the extent he meant to discount it, implicitly, on the basis of materiality prior to her DLI of her alcohol abuse, his determination is not supported by substantial evidence. While Dr. Millis suggested that the plaintiff's IQ had been affected by her depression, he did not opine that it had been affected by her alcohol abuse. *See id*. at 660. In any event, Dr. Millis found the plaintiff's IQ to be in the mentally retarded range as of July 2003 – a time frame when the administrative law judge determined that alcohol abuse was not a material issue. *See id*. at 18.[4] Presumably her IQ would have been the same or lower – but not higher – when she was actively abusing alcohol as of her DLI. Beyond this, the evidence adduced post-hearing, which never was shown to Dr. Millis or any other expert consultant, suggests that the plaintiff has experienced lifelong cognitive difficulty.

In short, inasmuch as (i) the plaintiff adduced enough evidence to raise a serious question

---

[4] The commissioner's regulations addressing substance abuse provide, in relevant part: "(1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol. (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling." 20 C.F.R. § 404.1535(b).

whether her condition met Listing 12.05B, (ii) the administrative law judge avoided the issue, failing to develop the Record adequately to answer the question, and (iii) his omission is not harmless inasmuch as, if the plaintiff's condition met Listing 12.05B she would be entitled to SSD benefits, this case must be remanded to obtain consultation from at least one mental-health expert, who has reviewed the entire Record, on the question whether the plaintiff's condition met Listing 12.05B as of her DLI.

## II.  Conclusion

Counsel for both parties have stipulated that this case must be remanded to address the omission of the June 18, 2003 transcript from the Record.  In addition, for the foregoing reasons, I recommend that the decision be **VACATED** and the case **REMANDED** on the additional basis that the administrative law judge failed to address the plaintiff's Step 3 argument, necessitating remand for consideration of that issue.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 7th day of June, 2005.

/s/ David M. Cohen  
David M. Cohen  
United States Magistrate Judge

8